IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KYRA H.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 3:20-cv-918-MO

OPINION & ORDER

MOSMAN, District Judge:

        This matter comes before me on Plaintiff Kyra H.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I REVERSE the Commissioner's decision and REMAND for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On January 30, 2017, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Tr. 149-55. The Social Security Administration ("SSA") denied her claim initially and upon reconsideration. Tr. 86-90, 94-96. Plaintiff appeared before Administrative Law Judge ("ALJ") Rudolph Murgo on January 30, 2019. Tr. 32-55. On February 20, 2019, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 112-31. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged onset of disability in November 2015 and her date last insured in June 2017. Tr. 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: epilepsy; postural orthostatic tachycardic syndrome (POTS); status post pacemaker placement; and anxiety disorder. Tr. 17. The ALJ determined that Plaintiff's medically determinable impairments of lumbar spine disorder, severe obstructive sleep apnea (OSA), and left shoulder/elbow pain were non-severe. Tr. 23-24. At step three, the ALJ found that Plaintiff's impairments did not meet the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Tr. 18. The ALJ assessed Plaintiff's residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F. R. 416.967(b), with the following additional limitations:

> [S]he can occasionally perform all postural activities but cannot climb. The claimant should avoid even moderate exposure to heights, hazards, and heavy equipment. She can perform frequent reaching in all directions and frequent handling, fingering, and feeling. The claimant can have occasional contact with the public and frequent contact with coworkers.

Tr. 20.

2 – OPINION & ORDER

At step four, the ALJ determined that Plaintiff was able to return to her past relevant work as a call center worker. Tr. 26. At step five, the ALJ found that Plaintiff could also perform jobs that exist in significant numbers in the national economy, specifically addresser, DOT #209.587-010; wafer breaker, DOT #726.687-046, and elections clerk, DOT #205.367-030. Tr. 27. The ALJ therefore found Plaintiff not disabled. Tr. 27.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises three primary issues with the ALJ's decision. First, she argues that the ALJ erred by rejecting fibromyalgia as a medically determinable impairment at step two. Second, Plaintiff contends the ALJ unreasonably discounted her symptom testimony without clear and convincing reasons for doing so. And third, Plaintiff argues the ALJ failed to give specific and legitimate reasons to reject Dr. Ashkan Babaie's opinion. I address each issue in turn.

I.      **Step Two Determination**

*A. Medical Record*

In December 2014, Plaintiff saw neurologist Matthew Evans, D.O., for management of her longstanding epilepsy. Tr. 930. Dr. Evans noted that Plaintiff was going to start the ketogenic diet to help manage this condition. Tr. 930. *See also* Tr. 327 (visit with dietician). Dr. Evans noted that Plaintiff's last seizure aura was earlier that month. Tr. 930. He continued the medication Keppra and prescribed Ativan as needed to control seizures. Tr. 932. In August 2015, Plaintiff went to the emergency department after losing consciousness twice that morning. Tr. 346. She described a seizure that morning and a seizure the previous day. Tr. 346. Before that, she had a seizure about one week earlier. Tr. 346. Her pacemaker reported sensed the accompanying ventricular events. *See* Tr. 276. Plaintiff noted that she had her medication levels checked recently, and they were in the therapeutic (i.e. effective) range. Tr. 346. Nathan Magaret, M.D., noted that Plaintiff had a hematoma on the left side of her head. Tr. 349. He prescribed the medication Ativan and advised Plaintiff to follow up with her neurologist. Tr. 350.

On November 11, 2015, Plaintiff went to the emergency room and was admitted to the hospital. Tr. 550. She described increasing problems with dizziness, nausea, and near-fainting. Tr. 555. Plaintiff was evaluated by several physician and underwent a variety of tests during this hospital stay. An electroencephalogram confirmed seizure activity and dysfunction in the left hemisphere of Plaintiff's brain. Tr. 582, 585. Tracy Sax, M.D., concluded that postural tachycardic syndrome seemed to be the cause of Plaintiff's symptoms. Tr. 589. Launa Gunderson, M.D., also noted a diagnosis of POTS syndrome. Tr. 552. Dr. Gunderson noted that Plaintiff improved some on the medication carvedilol but continued to have symptoms. Tr. 552. *See also* Tr. 570 (noting Plaintiff's symptoms did not improve with hydration and were present at

rest or when lying down). Dr. Gunderson advised Plaintiff to stop the ketogenic diet because it may have contributed to her POTS syndrome. Tr. 552. Plaintiff was discharged four days later on November 15, 2015. Tr. 550.

Later that same month, Plaintiff saw her treating cardiologist Ashkan Babaie, M.D., to discuss her presyncopal episodes and dizziness. Tr. 250. Dr. Babaie observed that Plaintiff's pacemaker was functioning well and was not contributing to her syncope. Tr. 249. He concluded that Plaintiff's symptoms were most consistent with POTS syndrome. Tr. 249. Dr. Babaie advised Plaintiff on the importance of aggressive hydration and "high salt intake," and he prescribed the blood pressure medication propranolol. Tr. 249.

In January 2016, Plaintiff began a course of physical therapy. Tr. 379. Plaintiff noted that she could leave the house with other people if she took breaks to sit. Tr. 379. Sometimes she needed to lie down due to her high heart rate, however. Tr. 379. It was difficult for her to get out of bed or go for walks by herself, due to her dizziness. Tr. 383. Andrea Koskamp, PT, advised a course of therapy for POTS syndrome. Tr. 379. She noted that exercising in a semi-reclined position may be helpful. Tr. 397. Ms. Koskamp advised Plaintiff to avoid bending over, dehydration, holding her arms in the air, lifting objects, over-stimulating environments, and stress. Tr. 397. Plaintiff continued with physical therapy over the following weeks. See Tr. 402-14. Later that same January, Ms. Koskamp observed that Plaintiff could not maintain balance without holding onto something. Tr. 403.

In April 2016, Plaintiff saw Emily Jacobsen, PA-C for cardiac rehabilitation therapy. Tr. 415. Jacobsen noted that Plaintiff was a "fall risk" and that her assistive device was a walker. Tr. 416. Accord Tr. 421, 427. Jacobsen advised brief periods of exercise, as tolerated. Tr. 416. James Beckerman, M.D., signed the report to indicate his agreement. Tr. 420.

5 – OPINION & ORDER

That same month, in April 2016, Koskamp noted that Plaintiff was "doing well" and progressing with physical therapy. Tr. 469. However, this meant that Plaintiff was able to walk on a treadmill for seven minutes. Tr. 469.

In July 2016, Koskamp noted that Plaintiff continued to improve. Tr. 528. This meant that she was able to use two walking sticks to walk, rather than the four-wheeled walker. Tr. 528. Plaintiff continued with physical therapy. See, e.g., Tr. 528.

In August 2016, Plaintiff returned to Dr. Babaie. Tr. 264. She noted that she was exercising more recently, but this involved walking using walking sticks. Tr. 264. She was having chest pain as well. Tr. 264. Dr. Babaie noted that Plaintiff's arrythmia (sinus arrest) was controlled by her pacemaker. Tr. 263. Her POTS syndrome was slowly improving but she continued to have symptoms. Tr. 263. Dr. Babaie advised Plaintiff she could take her medication up to three times a day and again emphasized the need for high salt intake. Tr. 263. Dr. Babaie noted that Plaintiff's chest pain may be musculoskeletal in nature. Tr. 263. That same month, an echocardiogram showed that Plaintiff's left ventricle had an ejection fraction of approximately 65%. Tr. 324.

That same month, in August 2016, Plaintiff saw her primary care provider Burton Silverman, M.D. Tr. 909. Plaintiff described chest pain over the last two to three weeks. Tr. 909. Dr. Silverman noted that the medication Keppra helped Plaintiff's seizure disorder and the antidepressant Lorazepam helped with her anxiety. Tr. 909. However, Dr. Silverman noted that Plaintiff continued to have a depressed and anxious mood. Tr. 910.

In January 2017, Lisa Enger, NP, noted that Plaintiff continued to have dizziness from her POTS syndrome and that she required crutches to walk. Tr. 1046. Enger noted that Plaintiff should see a fibromyalgia specialist for her continuing chest pain. Tr. 1046.

In February 2017, primary care provider Dr. Silverman noted that Plaintiff's chest pain may reflect fibromyalgia. Tr. 1056. "The chest pain is definitely a contributing factor to her limitations in conducting her daily life activities, including education and work effort. Tr. 1056. Dr. Silverman also noted that Plaintiff had significant anxiety regarding her physical conditions. Tr. 1056. Although Dr. Silverman did not perform a detailed mental status examination, she described Plaintiff as depressed and anxious. Tr. 1058.

In March 2017, neurologist Dr. Evans noted that Plaintiff was not having any seizures. Tr. 1069. Her chest pain, however, had "significantly impacted her day-to-day function." Tr. 1069. Dr. Evans also noted, "Her balance is impaired and due to the POTS she feels unstable. Ambulates with walking sticks." Tr. 1069. Her gait was slow, and she used walking sticks during the examination. Tr. 1070. Dr. Evans adjusted Plaintiff's medications and considered referring her to pain management. Tr. 1071.

A few months after the end of the relevant period, in July 2017, Plaintiff saw rheumatologist Sandy Christiansen, M.D. Tr. 1136. Plaintiff described her history of chest pain following the implantation of her pacemaker. Tr. 1136. She noted that physical therapy did not help her pain levels. T. 1136. Plaintiff noted that she attempted to work in July 2016, but she almost passed out walking up stairs and had to quit. Tr. 1137. Dr. Christiansen reviewed Plaintiff's treatment records and the results of the New Clinical Fibromyalgia Diagnostic Criteria survey. Tr. 1139-40. Plaintiff had a symmetrical gait, but her toe gait was unstable and she was unable to walk on her heels. Tr. 1139. Dr. Christiansen noted six out of the possible eighteen fibromyalgia tender points were positive. Tr. 1139. Dr. Christiansen found that various examination maneuvers, such as the subscapulris lift-off, caused pain in Plaintiff's arms and chest. Tr. 1139. Dr. Christiansen found Plaintiff's condition consistent with a diagnosis of

fibromyalgia. Tr. 1140. She advised medications, such as Cymbalta, and further treatment with pain specialists. Tr. 1140-41.

In August 2017, Thi Le Thutam, NP, noted that Plaintiff's dizziness and POTS syndrome had "somewhat improved" with taking midodrine three times a day. Tr. 1096-97. Yet Plaintiff continued to have significant dizziness and still required two walking sticks. Tr. 1097. Thutam advised the use of an abdominal binder, compression stockings, and standing or leaning against a wall, among other lifestyle modifications. Tr. 1096. Thutam diagnosed noncardiac chest pain given Plaintiff's continued pain around her pacemaker. Tr. 1097.

In September 2017, Plaintiff saw Amanda St. John, DNP, for further treatment of her fibromyalgia pain. Tr. 1175. St. John observed that Plaintiff walked with a cane and that eighteen out of eighteen fibromyalgia tender points were positive. Tr. 1175. St. John noted that Plaintiff met the criteria for a diagnosis of fibromyalgia. Tr. 1176. Plaintiff continued with physical therapy focused on her fibromyalgia pain over the following months. *See* Tr. 1180-1223.

*B. Plaintiff's Fibromyalgia*

Plaintiff argues that the ALJ erred by failing to identify her fibromyalgia as a medically determinable impairment at step two. At step two of the sequential evaluation, the claimant has the burden to show that she has a severe medically determinable impairment that can be expected to result in death or last for a continuous period of at least twelve months. *Celava v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An ALJ will find that a claimant has a medically determinable impairment only if the record includes "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921. Further, an ALJ will find an impairment to be "severe" only if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c),

416.920(c). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work ." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir.1996) (internal quotation marks and citations omitted). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims,' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen,* 80 F.3d at 1290 and S.S.R. 85–28).

Relevant here, fibromyalgia can be established as medically determinable under either of two separate sets of criteria, enumerated in Social Security Ruling 12-2p. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015). First, based on the "1990 ACR Criteria for the Classification of Fibromyalgia," this impairment is medically determinable if: (1) the claimant has a "history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present."; (2) "[a]t least 11 positive tender points on physical examination"; and (3) there is "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 1996 WL 374187, at *2-3.

Second, based on the "2010 ACR Preliminary Diagnostic Criteria," fibromyalgia is medically determinable if: (1) the claimant has a "history of widespread pain," as elaborated in the 1990 ACR criteria; (2) the claimant has "[r]epeated manifestations of six or more symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel

9 – OPINION & ORDER

syndrome"; and (3) there is "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

In assessing fibromyalgia at step two, the ALJ acknowledged that plaintiff had twice been diagnosed with fibromyalgia. Tr. 18. But the ALJ determined fibromyalgia was not medically determinable, reasoning that the "findings of record are not sufficient to establish a diagnosis of fibromyalgia." Tr. 18. The ALJ cited both the 1990 and 2010 ACR criteria, and dismissed Plaintiff's fibromyalgia diagnoses for failure to meet those benchmarks. Tr. 18. In dismissing Dr. Christiansen's fibromyalgia diagnosis, the ALJ found it "noted six tender points, and did not specify the locations," and "appears to have been based on the claimant's subjective responses to a survey regarding symptoms." Tr. 18. The ALJ refused to consider nurse practitioner Amanda St. John's fibromyalgia diagnosis because she failed to document the locations of the 18 tender points, and "is not an acceptable medical source for the purpose of establishing the existence of medically determinable impairments."

The ALJ made two errors in evaluating Plaintiff's fibromyalgia at step two. First, the ALJ erred by failing to adequately analyze Dr. Christiansen's fibromyalgia diagnosis under the 2010 ACR criteria. An ALJ's failure to evaluate evidence of fibromyalgia under the 2010 ACR criteria constitutes legal error. *Kaytlin B. v. Comm'r Soc. Sec. Admin.*, 2020 WL 5803937, *4 (D. Or. Sept. 2020); *see also Rounds*, 807 F.3d at 1005. Although the ALJ cited the 2010 criteria in his opinion, he only applied the 1990 diagnostic criteria. The ALJ specifically rejected Dr. Christiansen's diagnosis of fibromyalgia in terms of the 1990 factors, writing: "Dr. Christiansen only noted six tender points, and did not specify the locations; her diagnosis appears to have been based on the claimant's subjective responses to a survey regarding symptoms." Tr. 18. These are not reasons to reject a diagnosis of fibromyalgia under the 2010 diagnostic criteria,

10 – OPINION & ORDER

which do not require "at least 11 positive tender points," like their 1990 predecessors. SSR 12-2p, 1996 WL 374187, at *2-3. Although the ALJ is correct that the record does not indicate the requisite eleven trigger points under the 1990 criteria, he completely ignored the 2010 ACR criteria. Under the 2010 ACR criteria, trigger point testing is not required to establish medical determinability, and a provider's reliance on Plaintiff's responses concerning pain are not a valid reason to reject that medical source's fibromyalgia diagnosis. *Id.* This was error, and the ALJ must consider Plaintiff's fibromyalgia diagnoses under the 2010 criteria on remand.

Second, the ALJ erred by failing to consider NP St. John's fibromyalgia diagnosis at all. To reject the competent testimony of "other" medical sources,[2] the ALJ must give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The mere fact that a healthcare provider is not an acceptable medical source is not a germane reason to reject their opinion. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (finding that provider's status as a "non-acceptable" medical source was not a germane reason to reject her opinions—even where the provider supplied information by filling out a check-box form). Here, the ALJ rejected NP St. John's fibromyalgia diagnosis because she was "not an acceptable medical source for the purpose of establishing the existence of medically determinable impairments." Tr. 18. This was legal error. The ALJ did not discuss the quality of NP St. John's opinion, or any of the six factors listed in SSR 06-03p he was required to consider when deciding how much weight to give "other" medical source opinion evidence. 20 C.F.R. §§ 404.1512(b)(v),

---

[2] Plaintiff does not contest the ALJ's finding that NP St. John was not an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1513(a) (describing "sources who can provide evidence to establish an impairment"). The Ninth Circuit has held that to the extent nurse practitioners "work[] closely with" or are "under the supervision of [a doctor]" their opinions qualify as from an "acceptable medical source." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). On remand, the ALJ should clarify whether NP St. John meets these criteria.

11 – OPINION & ORDER

416.912(b)(v). On remand, the ALJ should consider NP St. John's opinion fully, as required by the regulations at step two.

Ultimately, the ALJ's decision to find plaintiff's fibromyalgia not medically determinable at step two adversely affected each subsequent step of the sequential evaluation process. That is, the ALJ's subsequent evaluation, including the RFC assessment, explicitly did not consider the effects of plaintiff's non-medically determinable impairments. To be sure, the ALJ's decision considered several signs or co-occurrences of fibromyalgia, such as Plaintiff's periodic "depression" and "anxiety." Tr. 909. But the ALJ excluded Plaintiff's fibromyalgia pain from the RFC by finding it was not medically determinable. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . ."). As such, the ALJ's step two error was harmful. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless); *see also Janie Elizabeth G. v. Saul*, 2020 WL 13505040, *5 (W.D. Wash. May 29, 2020); (ALJ commits reversible error at step two by "not including fibromyalgia as a medically determinable impairment [where] fibromyalgia symptoms [are excluded] from consideration at steps four and five.").

**II.      Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the January 2019 hearing, Plaintiff testified that she graduated high school in 2013 and went to work in a call center. Tr. 40. She worked at the call center until 2015, but she left work due to her seizures and her other medical conditions. *See* Tr. 41. Plaintiff missed too many days of work and had to resign from her position. Tr. 51. Plaintiff acknowledged that her seizures improved with medication. Tr. 42, 49. However, she continued to have significant symptoms from her POTS syndrome. Tr. 42. Plaintiff explained that her blood pressure rapidly changed when she moved and that she was dizzy and nauseous all the time. Tr. 42-43. The ALJ noted that she came into the hearing room using two walking sticks. Tr. 43. Plaintiff used walking sticks

whenever she was in public. Tr. 50. She described drinking three liters of water and seven grams of salt each day to regulate her blood pressure. Tr. 48.

With respect to her daily activities, Plaintiff explained that she could not cook over a stove because heat was a trigger for her seizures and POTS syndrome. *See* Tr. 44. She folded laundry but did not wash it. Tr. 45. She would go shopping but was accompanied by family, because she could not push a heavy cart. Tr. 44-45. Plaintiff noted that she was now a part-time student at Portland State University, and she was taking one to two classes a quarter. *See* Tr. 36, 45-46. She testified that she missed about one-third of her classes, and the university gave her several accommodations. Tr. 47-48.

The ALJ discounted Plaintiff's symptom testimony as inconsistent with the "overall record" and Plaintiff's improvement with treatment, but failed to articulate with enough specificity which of Plaintiff's statements were inconsistent with the medical records or Plaintiff's successful treatment. *See* Tr. 21-23. While the written opinion gives a high-level summary of Plaintiff's testimony, summarizes the medical records related to Plaintiff's anxiety, POTS, and seizures, and noted that "some limitations…are reflected in the [RFC]," the ALJ did not articulate what specific allegations he rejected. Tr. 21. Accordingly, because the ALJ failed to provide the required clear and convincing reasons to reject Plaintiff's symptom testimony, the court must remand because " 'we cannot ... speculate as to the grounds for the ALJ's conclusions.' " *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)). Although the ALJ provided extensive and thorough summaries of the medical records, the ALJ must also " 'provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.' " *Id.* (citing *Treichler*, 775 F.3d at 1103). Because the ALJ failed to clarify

what specific testimony the medical records and successful treatment called into question, the Court remands with instructions to connect the dots of this analysis more clearly, as the Ninth Circuit requires.

**III    Dr. Babaie**

Plaintiff also argues the ALJ erred by giving only "some weight" to Dr. Ashkan Babaie's opinion about Plaintiff's mobility and the need for Plaintiff to lie down during the workday. Tr. 25. In January 2019, cardiologist Dr. Babaie noted that he treated Plaintiff since 2014. Tr. 1272. He noted that Plaintiff's primary symptoms were related to her POTS syndrome, and these included lightheadedness, palpitations, fatigue, syncope, and dyspnea (shortness of breath) on exertion. Tr. 1272. Dr. Babaie noted that Plaintiff could carry 10 pounds occasionally, stand or walk for 30 minutes at one time, and sit for eight hours. Tr. 1273. However, Dr. Babaie noted that Plaintiff could have symptoms that require her to lie down during the workday. Tr. 1273. He estimated that she would be off-task ten percent of the workday and that she would miss 16 or more hours of work each month due to her symptoms. Tr. 1274.

The ALJ reasonably discounted Dr. Babaie's opinion because it was inconsistent with other evidence in the record. Tr. 25. When a treating or examining physician's opinion is contradicted by another physician, as is the case here, the ALJ is required to give "specific and legitimate" reasons to reject that treating or examining physician's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).[3] The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his opinion thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Here, the ALJ

---

[3] The Commissioner adopted new medical regulations for claims filed on or after March 27, 2017. However, Plaintiff protectively filed her claim on January 30, 2017, before the new rules took effect. Tr. 15.

15 – OPINION & ORDER

pointed to objective findings including inconsistent gait abnormalities but otherwise no lower extremity weakness to discount the standing and walking limitations Dr. Babaie endorsed. Tr. 25 (citing Tr. 1030, 1070). The ALJ also relied on Plaintiff's reported ability to walk both with and without sticks, which suggested Plaintiff was capable of sedentary work. Tr. 25 (citing, e.g., Tr. 494, 705, 711, 720, 770. He further noted that Plaintiff's improvements with treatment of seizures, POTS, and chest pain conflicted with Dr. Babaie's opined limitations. Tr. 25, 1067. This evidence all supports the ALJ's conclusion that Plaintiff was capable of sustained work with two hours of standing or sitting per workday. Plaintiff's further arguments are an effort to have this Court re-weigh the evidence, which is not the province of this Court's review. *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987) (noting that the Court may not "reweigh the evidence [and] substitute [its] own judgment" for the ALJ's). The Court finds the ALJ did not err, and therefore need not to re-visit his decision to provide only "some weight" to Dr. Babaie's opinions on remand.

## IV.    Remand

The decision whether to remand for further proceedings or for a finding of disability and an immediate award of benefits lies within the discretion of the court. Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

This case is not one of those rare instances where remand for an immediate award of benefits is warranted. *Treichler*, 775 F.3d at 1105-07. Failing to consider whether plaintiff's symptoms met the 2010 ACR criteria has been recognized as grounds for further proceedings. *See, e.g., Kaytlin B.*, 2020 WL 5803937 at *7; *Weiskopf v. Berryhill*, 693 Fed. App'x 539, 542 (9th Cir. 2017). Additionally, the ambiguities remaining in the record are cause for further proceedings. For instance, plaintiff was able to enroll in college, attend classes, and maintain a solid GPA despite endorsing significantly worsening fibromyalgia symptoms at that time. Tr. 36-38. On remand, the ALJ must reevaluate Plaintiff's fibromyalgia at step two under the 2010 ACR criteria. The ALJ must also clarify what specific portions of Plaintiff's symptom testimony he is discounting based on which specific medical records so that the Court may meaningfully determine whether the ALJ's decision to discount Plaintiff's subjective symptom testimony is supported by substantial evidence.

## CONCLUSION

For the reasons given above, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

IT IS SO ORDERED.

DATED:     8/30/2023            .

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

17 – OPINION & ORDER